UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMOND PERRY,

    Plaintiff,

v.

UNKNOWN CURTIS,
UNKNOWN WARD,
UNKNOWN WELTY, and
ADRIAN DIRSCHELL,

    Defendants.
_____/

Case No. 1:22-cv-729

Hon. Jane M. Beckering

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Jermond Perry, a prisoner in the custody of the Michigan Department of Corrections (MDOC), brought this lawsuit seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). The alleged incident occurred at the Muskegon Correctional Facility (MCF). Plaintiff named four defendants in this action: MCF Champlain Craig Curtis; MCF Food Service Director (FSD) Christopher Ward; MCF Food Steward Nathan Welty; and, during the relevant time period: MDOC Special Activities Coordinator (SAC) Adrian Dirschell.  This matter is now before the Court on cross-motions for summary judgment filed by defendants (ECF No. 41) and plaintiff (ECF No. 43).

    **I.**    **Background**

Perry alleged that he is an adherent of the "Melanic Islamic Faith".  Compl. (ECF No. 1, PageID.5).   By way of background, a Michigan prisoner named Fa'Dee Mulazim created

a religion known as the "Islamic Palace of the Rising Sun". *See Mulazim v. Michigan Department of Corrections*, 28 Fed. Appx. 470, 470-471 (6th Cir. 2002). "[The] MDOC recognized Melanic Islamic Palace of the Rising Sun ('Melanic') as an official religion in 1983 pursuant to a consent decree." *Johnson v. Martin*, 223 F. Supp. 2d 820, 823 (W.D. Mich. 2002). "In 1997, the MDOC moved the district court to terminate the 1983 consent judgment pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626." *Islamic Palace of Rising Sun v. Johnson*, 191 F.3d 452, 1999 WL 775801 at *1 (6th Cir. Sept. 24, 1999) (unpublished disposition). The Sixth Circuit affirmed "the district court's judgment terminating the consent judgment". *Id*.

Based on this history, "Melanics" is a non-recognized religion which is classified as a security threat group within the MDOC:

> In January 2000, the MDOC classified the Melanics as a security threat group (STG). *Johnson v. Martin* [*Johnson I*], 223 F. Supp. 2d 820, 823 (W.D. Mich. 2002). That classification followed a riot at URF involving a number of Melanic inmates. *Johnson v. Martin* [*Johnson II*], No. 2:00-cv 75, 2005 WL 3312566, at *6 (W.D. Mich. Dec. 7, 2005).
>
> The *Johnson* Plaintiffs raised several constitutional challenges to the MDOC's actions, including violation of the First Amendment Free Exercise Clause, violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), violation of the Fourteenth Amendment Due Process Clause, and violation of the Fourteenth Amendment Equal Protection Clause.
>
> The Johnson Plaintiffs challenged the classification of the Melanics as an STG, the ban of Melanic group worship, the confiscation of Melanic written materials and symbols, and a ban of Melanic written materials. . . .
>
> The Court found that the Melanics espoused violence and racism and created a hierarchical structure that was different than, and potentially contrary to, the MDOC hierarchical structure. The Court rejected the Melanics' claims regarding the designation of the group as an STG and denied the claim that confiscation of Melanic materials as contraband violated the group members' First Amendment right to freely exercise their religion; however, the Court concluded that under the RLUIPA, the MDOC could not simply ban all Melanic Literature. The Court held that the MDOC would have to review the materials to determine whether they were a threat to the safety and security of the prison. *Johnson v. Martin* [*Johnson IV*], No. 2:00-cv-75, 2006 WL 223108, at *2 (W.D. Mich. Jan. 30, 2006) ("So long as Defendants are making a good faith determination when

they screen Melanic Literature to assure only prohibited materials are prevented entry into MDOC institutions, they are obedient to the Court's Ruling.").

*Edwards v. Washington*, No. 1:20-cv-908, 2020 WL 6792373 at *1-2 (W.D. Mich. Nov. 19, 2020) (footnotes omitted).

## II. Plaintiff's lawsuit

### A. Background and allegations

Plaintiff's affiliation with the Melanics pre-dates this lawsuit. On June 1, 2016, plaintiff refused to sign a document renouncing his affiliation with the Melanics to remove his STG designation. *See* Renunciation/Removal (ECF No. 42-9, PageID.326) (noting that on 6/1/16 "Prisoner refused to sign").[1] At some point, plaintiff identified himself as a member of the Nation of Islam. Then, on March 26, 2022, plaintiff signed an MDOC form to change his religious preference from Nation of Islam to the "Melanic Islamic Faith". *See* Change of Religious Preference (ECF No. 22-5, PageID.138). The MDOC accepted the form on March 29, 2022. The incidents alleged in this lawsuit commenced on the latter date.

Plaintiff alleged that the Melanic faith requires individuals to fast for the last ten days of Ramadan. Compl. at PageID.5. On March 29, 2022, Chaplain Curtis told plaintiff that he would be denied fasting meals during those last ten days. *Id*. SAC Dirschell later changed plaintiff's religion to "No Preference," and Curtis, FSD Ward, and food steward Welty denied him meals during Ramadan. *Id*.[2] Curtis told plaintiff that he had to purchase his own meals because

---

[1] The form (PageID.326) allows a prisoner to renounce STG affiliation to have his STG designation removed. The form provides in part,

> In making this renunciation, I am obligated to remain unaffiliated with the above named Security Threat Group or any other Security Threat Group, (as outlined in PD 04.04.113 Identification and Management of Security Threat Groups and Members) or I will immediately be processed for designation as an STG member/revert to my former security threat group member status.

[2] SAC Dirschell acknowledged that he assisted in changing plaintiff's religious designation from "Melanic Islamic Faith" to "No Preference" because "Melanic Islamic Faith is not currently a recognized religious group within the

3

the MDOC did not offer a meal program for his religion. *Id*. Plaintiff responded that he could not afford to pay for his own meals. *Id*.

Plaintiff alleged that on April 7, 2022, food steward Welty removed plaintiff's name from the list of those participating in the fast. *Id*. When asked "who made the decision he could not receive a meal?", Welty stated "Curtis, Ward and somebody from Lansing." Compl. at PageID.6. Plaintiff identified "[t]he unknown MDOC Lansing official" as SAC Dirschell." *Id*.

### B.     Plaintiff's causes of action

Plaintiff sets forth three causes of action based on these allegations.

#### 1.     Civil Rights claims pursuant to 42 U.S.C. § 1983

Plaintiff seeks declarative and injunctive relief under 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, Ohio, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

##### a.     First Amendment violation

In his first claim, plaintiff alleged violations of the First Amendment's Establishment Clause and Free Exercise Clause. Compl. at PageID.6-7. The First Amendment provides that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]"

> The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires

---

MDOC, which means in the system, Perry's religious designation was appropriately changed to 'No Preference.'"
*See* Dirschell Decl. (ECF No. 42-2, PageID.282).

> government respect for, and noninterference with, the religious beliefs and practices of our Nation's people. While the two Clauses express complementary values, they often exert conflicting pressures.

*Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).

Here, plaintiff alleged that on April 21, 2022, he tried to resolve the meal issue with FSD Ward, with plaintiff advising Ward that "Melanic is a religion and the Fast of I'tikaf would begin on Mel-Tauba (April) 23, 2022", that the religion was protected by the First Amendment and RLUIPA. Compl. at PageID.6. Ward told plaintiff that there was nothing he could do and to talk to Chaplain Curtis. *Id*. Plaintiff responded that he already had talked to Curtis, was told to purchase his own meals, but could not do so because of his "STG restrictions." *Id*. Ward again said that there was nothing he could do and suggested that plaintiff "renounce Melanic and change his religion." *Id*. Plaintiff alleged that he went without meals provided by the MDOC for ten days, and when he did find food he was forced to break his fast early "while experiencing hunger pains and weight loss." *Id*. at PageID.6-7. Plaintiff reiterated that his dispute involves four individuals at MCF:

> This determination was initiated by defendant Curtis, MCF Chaplain and carried out by defendant Ward, MCF Food Service Director and defendant Welty, MCF Food Service E9. The Final determination was made by defendant Curtis and defendant Adrian Dirschell, MDOC Special Activities Director.

*Id*. at PageID.7.

### b. Fourteenth Amendment violation

In his second claim, plaintiff alleged violations of the Equal Protection Clause. "The Fourteenth Amendment's Equal Protection Clause provides that '[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Koger v. Mohr*, 964 F.3d 532, 544 (6th Cir. 2020). "The Clause embodies the principle that all persons similarly situated should be treated alike." *Id*. (internal quotation marks omitted). Here, plaintiff contends that defendants

5

violated the Equal Protection Clause "because the Nation of Islam, Moorish Americans and Sunni Al-Islam were granted recognition by MDOC they are allowed to receive the exact same meal plaintiff was being denied during the Holy month of Ramadan." Compl. at PageID.7.

### 2. RLUIPA violation

In his third claim, plaintiff alleged violations of RLUIPA, which states in part that,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2).

Plaintiff alleged as follows,

> 15. Defendant Curtis, Ward, and Welty informed plaintiff he would not receive a meal during Ramadan because Melanic were not a religion. Plaintiff was told to renounce or observe on his own and purchase food from the prisoner store. The defendants are following MDOC policy which states in order for an inmate to be removed from STG status they must first sign renunciation form. See MDOC Policy, 04.04.113(FF).

> 16. As a result of plaintiff's religious STG designation, plaintiff is not allowed to work, possess any Melanic Islam religious materials, communicate with any Melanic Islamic practitioners whether free or incarcerated, nor participate in any Melanic Islamic daily rituals and activities such as mental, physical and spiritual awareness classes, observation of the Melanic Day of Remembrance, observation of the Codex of Radehood, observation of the Holy Congregational Prayer Day on Al-Jumma O'Day (Friday), observation of the Holy Sabbath Day on Fu-Qua O'Day (Saturday) or fasting during the last ten days of the Arabic month of Ramadan known as the Melanic Fast of I'tikaf. Although these activities are central to Melanie practices and beliefs, these activities are considered engaging in STG behavior.

> 17. Defendants Curtis, Welty and Ward were informed plaintiff depends on the meals provided by MDOC during Ramadan and could not afford to purchase meals due to STG policy and MDOC rules: a) Plaintiff is unemployable. See MDOC Policy 04.04.113(BB)(10). Any money received from plaintiff's family are gifts that are not definite and could stop at any time during the Fast of I'tikaf or any other Melanic Islamic Fast due to financial hardships; b) Plaintiff is not allowed to have

6

family purchase food from Friends & Family Package. See MDOC Policy 04.04.113(BB)(6); and c) Plaintiff is not allowed to remove food from MDOC chow hall. It is a violation of MDOC Rules. See MDOC MCF Prisoner Guide Book, Dining Room Rules, (14) and (15).

18. Fasting is essential to plaintiff's religious beliefs. Defendants actions forced plaintiff to violate his religious practice by violating MDOC rules during a time the Holy Qu'ran was sent down to mankind as a guide between right and wrong.

19. Plaintiff was forced to modify his behavior and display conduct unbecoming of a Melanic Muslim and forced plaintiff to ask fellow inmates to violate MDOC rules by removing food from the chow hall. In addition, when able, plaintiff was forced to break his religious fast early with the food given to him or take the risk of food spoiling becoming unable to consume or have it confiscated by MDOC staff and receive a misconduct.

20. Defendants actions have placed a substantial burden on plaintiff's practices, beliefs and rehabilitative requirements. The defendants actions are not in furtherance of any compelling governmental interest because neither plaintiff nor religious Melanic Fast of I'tikaf can be attributed to any acts of violence or disturbances within the MDOC. Moreover, hundreds of MDOC incarcerated Muslims receive meals for the entire thirty-days whereas plaintiff's religion only requires fasting the last ten days.

PageID.7-9.

### C.     Plaintiff's requested relief

Plaintiff asks for a declaratory judgment[3], stating that defendants and the MDOC: (1) violated his religious Free Exercise Rights; (2) violated his religious rights to Equal Protection; (3) violated the Establishment Clause preferring other Islamic faith, practices and beliefs over plaintiff's faith, practices and beliefs; and, (4) placed a substantial burden on him to practice his religion while confined in MDOC which violated his rights protected by RLUIPA. *Id*. at

---

[3] *See* Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."). While plaintiff seeks both an injunction and a declaratory judgment, "there is little practical difference between injunctive and declaratory relief." *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982). *See Skyworks, Ltd. v. Centers for Disease Control and Prevention*, 542 F. Supp. 3d 719, 723 (N.D. Ohio 2021) ("A declaratory judgment is an equitable remedy in the nature of an injunction.").

PageID.12. Plaintiff also asks for a permanent injunction against defendants and the MDOC: (1) to remove the STG designation from him; (2) to remove the STG designation from the Melanic religion which would allow plaintiff to engage in Melanic practices such as (3) receive a meal when fasting the last ten days during the month of Ramadan; (4) receive a meal after the 24-hour fast when observing the Annual Day of Remembrance; and (5) observe the Melanic "Codex of Radhood" and receive a meal when observing the six month fast. *Id*. at PageID.12-13.

### III. Motion for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### IV. Discussion

#### A. Personal capacity claims

Plaintiff does not seek compensatory damages against defendants. Rather, he seeks declarative and injunctive relief to change the MDOC's policies to recognize the Melanic religion and remove the MDOC's designation of the Melanics as an STG. Defendants contend that plaintiff cannot seek the requested relief against them in their personal capacities. The Court agrees.

> Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.*, his official capacity. The Supreme Court, in *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), explained that the difference between official capacity suits and personal capacity suits derives not from the capacity in which the state official acted at the time of the alleged violation, but rather from the capacity in which the official is sued. 502 U.S. at 27, 112 S.Ct. 358.

*Community Mental Health Services of Belmont v. Mental Health & Recovery Board Serving Belmont, Harrison & Monroe Counties*, 150 Fed. Appx. 389, 401 (6th Cir. 2005). Accordingly, the Court should grant defendants' motion for summary judgment on plaintiff's claims brought against them in their personal capacities.

#### B. Plaintiff's claim regarding the 2022 fast

Plaintiff's lawsuit involves one matter at MCF which occurred in March and April 2022, *i.e.*, plaintiff did not receive approval for an unrecognized Melanic fast during the last ten days of Ramadan. *See* Compl. at PageID.5. When plaintiff changed his religious preference from Nation of Islam to the Melanics STG, it should have been no surprise that he would be removed from the list of prisoners participating in Ramadan. As plaintiff pointed out, the Melanics only

9

fast during the last 10 days of Ramadan. Food steward Welty provided the following explanation of the Ramadan list and plaintiff's removal from that list:

> 4. For Ramadan, prisoners who are part of a religious group that is approved to participate in the Ramadan fast, and request to participate within the designated time, are placed on a participant list.
>
> 5. I do not create the participant list, and I am not the decision maker of who gets added to or removed from the list.
>
> 6. Perry's name was originally on the list, because his religious designation was Nation of Islam.
>
> 7. Perry changed his religious designation to Melanic, which is not a recognized religious group within the MDOC and is instead a Security Threat Group.
>
> 8. I was instructed to remove his name from the participant list, because Perry no longer qualified to participate in Ramadan, and I have no authority to disobey that instruction and no control over Security Threat Group status.

Welty Decl. (ECF No. 42-5, PageID.307).

Although plaintiff was removed from the Ramadan list, he could have submitted a request to the Warden to approve this fast. MDOC Policy Directive (PD) 05.03.150 ¶ WW (eff. 01/03/2022) sets forth the procedure by which a prisoner can obtain permission to observe a religious observance (*e.g.*, a fast or a feast) that has not been approved, stating in pertinent part:

> [P]risoners shall be permitted to observe religious fasts and feasts that are necessary to the practice of their religion, as approved by the CFA Special Activities Coordinator and set forth in the Handbook of Religious Groups. A prisoner or group of prisoners who wants to observe a religious fast or feast that has not already been approved by the CFA Special Activities Coordinator must submit a written request to do so to the Warden or designee that shall include information regarding the religion's beliefs and practices. The Warden or designee shall refer the request and supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command for approval. The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. Approval shall be granted only if the fast or feast is necessary to the practice of a bona fide religion and observance of the fast or feast would not pose a threat to the order and security of the facility. The CFA Special Activities Coordinator shall ensure ADDs and Wardens are notified of newly approved religious fasts or feasts.

PD 05.03.150 ¶WW (ECF No. 42-3, PageID.293).

SAC Dirschell explained that plaintiff did not qualify for the 2022 Ramadan fast due to his new designation as a Melanic and how he could have sought approval for the 10-day fast:

> 10. The religious groups that celebrate Ramadan are Al-Islam, Nation of Islam, and Moorish Science Temple[.]
>
> 11. Only prisoners who are designated in one of those three religious groups can sign up to participate in Ramadan without further approval.
>
> 12. Perry's religious designation had been Nation of Islam since 2016 and he had been allowed to participate in Ramadan.
>
> 13. As soon as he changed his religious designation to Melanic Islamic Faith, he no longer qualified for Ramadan.
>
> 14. When Chaplain Curtis reached out about Perry's changed designation, I confirmed that Melanic was not a recognized religion and did not qualify for Ramadan fasting bags.
>
> 15. In his new designation, Perry did not want to participate in Ramadan, he wanted to participate in a Melanic fast during the last 10 days of Ramadan.
>
> 16. MDOC officials are not permitted to provide special meals that are not authorized by policy, or as otherwise approved through policy.
>
> 17. Policy allows prisoners who would like to participate in a fast that is not already approved, to seek approval and meal support for the fast, by submitting information and supporting documentation about the religion and the requested fast to the Warden for processing and consideration through the proper channels.
>
> 18. When a proper request is made, as the Special Activities Coordinator I can authorize participation in a fast.
>
> 19. Perry did not submit a request for consideration according to policy. He sent a kite informing officials that his Melanic Faith required him to fast during the last 10 days of Ramadan, which he is allowed to do, on his own. Nothing about this kite provided information or supporting documentation about the fast or the religion. It did not ask for formal approval, and did not request that the MDOC provide fasting meals. There was nothing more for me to consider.

Dirschell Decl. (ECF No. 42-2, PageID.282-283).

There is no evidence that plaintiff sent a request to the Warden pursuant to PD 05.03.150 ¶ WW.  The record includes a kite or letter from plaintiff to Chaplain Curtis dated March 7, 2022 referencing "Ramadan Observance" (ECF No. 22-6, PageID.140). Plaintiff's kite did not meet the requirements of the policy directive: plaintiff did not submit the request to the Warden; his religious preference at that time was Nation of Islam (rather than the unrecognized religion and STG Melanics); and, plaintiff qualified to participate in Ramadan as a member of the Nation of Islam.  Plaintiff sent another kite to the Chaplain (not the Warden) on March 28, 2022, which referred to his March 26, 2022 "Declaration of Religious Preference to observe the Melanic Islamic Faith during the month of Ramadan" (ECF No. 22-6, PageID.141).  The kite mentioned Ramadan in one sentence,

> This letter is to inform you that pursuant to my religious beliefs and practices, i.e., Melanic Islamic Declaration of Faith, I am required to fast the last ten days during the Arabic Month of Ramadan.

*Id*.  Chaplain Curtis responded, "The department doesn't offer a meal program for this currently. You may observe on your own."  *Id*.  Finally, plaintiff sent a kite to "Food Service" (not the Warden) on March 31, 2022, regarding "Ramadan Observance" (ECF No. 22-6, PageID.142).

In summary, plaintiff did not submit a request to approve the Melanics' 10-day fast pursuant to PD 05.03.150 ¶WW. For that reason, plaintiff's claim should be denied.  *See Williams v. White*, 724 Fed. Appx. 380, 382 (6th Cir. 2018)) ("Under the PLRA, a prisoner may not seek relief in court if he did not first seek the relief available within his prison.").  In reaching this determination, the Court recognizes that it must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995).  Here, plaintiff did not give defendants an opportunity to properly

evaluate his request for an unapproved religious fast. In this instance, the MDOC would have a significant institutional security interest in addressing plaintiff's request, because the unapproved fast involved an STG. Accordingly, defendants should be granted summary judgment on plaintiff's request for an injunction regarding the Melanics' 10-day fast.

### C. Plaintiff's other claims

Despite the limited nature of the dispute over the 10-day fast, plaintiff seeks to have this Court issue sweeping injunctions directing the MDOC to recognize the Melanic religion with its related practices, removing the Melanics' STG designation, and removing plaintiff's own STG designation.

With respect to recognizing the Melanic religion, plaintiff's complaint: does not allege that he submitted a request to seek recognition of the Melanic religion pursuant to PD 05.03.150; does not allege that a decision was made on such a request by the MDOC's Deputy Director; and, does not name the decisionmaker (the Deputy Director) as a defendant.[4]

---

[4] PD 05.03.150 ¶¶ K-L sets forth the procedure to recognize a religion:

K. A prisoner or group of prisoners belonging to a religious group not recognized by the Department may request Department recognition of that group by submitting a written request to the Warden or designee. The request shall include information regarding the group's religious beliefs and practices. The Warden shall ensure all requests and supporting documents are referred to the CFA Special Activities Coordinator for review through the appropriate chain of command. The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. The CFA Special Activities Coordinator shall forward their recommendation, and that of the CAC if applicable, to the Deputy Director for a final determination.

L. The Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition, and if so, whether group religious services and activities and personal religious property will be allowed. The group shall be granted recognition if it is determined to be a bona fide religious group with beliefs and practices not adequately represented by an existing recognized religious group, based on any recommendation received from the CAC. The decision whether to allow the group to conduct group religious services and activities, and whether to allow personal religious property, shall be based on whether the practice of the religion or possession of the property item would pose a custody and security threat. The decision whether to allow the group to conduct group religious services and activities also shall be based on the number of prisoners identified as belonging to the religious group. All Assistant Deputy Directors (ADD) and Wardens shall be advised of the final decision.

PD 05.03.150 ¶¶ K-L (PageID.288).

With respect to the STG status, plaintiff's complaint: does not allege that he took any steps at the MDOC related to the Melanic's STG designation; does not allege that he followed the procedure to appeal his STG designation; and, does not name the STG decisionmaker (the Emergency Management Section Manager) as a defendant.[5]

Based on these policies, none of the defendants named in this action – SAC Dirschell, Chaplain Curtis, Food Steward Welty, and FSD Ward – have authority to recognize the Melanics as a religion, to remove the Melanics' designation as an STG, or to remove plaintiff's designation as a member of an STG. Because plaintiff did not properly seek the requested relief through MDOC prior to filing this lawsuit (*see Williams*, 724 Fed. Appx. at 382) and "[b]ecause Plaintiff has failed to assert this action against a defendant with the authority to grant the specific relief he requests," defendants are entitled to summary judgment on plaintiff's official capacity and RLUIPA claims as to his requests for injunctive relief. *See Ali v. Adamson*, No. 1:21-cv-71,

---

[5] MDOC PD 04.04.113 (eff. 12/20/2021) states in pertinent part,

H. The Manager of the Emergency Management Section (EMS), Operations Division, Correctional Facilities Administration (CFA) is responsible for the compilation, dissemination and sharing of STG information as well as the coordination of all Department STG tracking and monitoring. . . .

M. The EMS Manager or designee shall ensure written notification of the decision whether to designate a group as a STG, along with pertinent identifying information of each STG, is provided to all Wardens, local STG Coordinators, other staff, and outside agencies as deemed appropriate. . . .

T. The EMS Manager or designee shall make the final determination on whether to designate the prisoner as a STG I member and shall complete the Security Threat Group (STG) Member Identification form (CSJ-102). The EMS Manager shall ensure a copy of the completed form is sent to the appropriate Warden or designee. The Warden or designee shall ensure a copy is placed in the prisoner's Record Office and Counselor files and that a copy is provided to the prisoner, the local STG Coordinator, and other staff, as appropriate. . . .

EE. A prisoner designated as a STG member may file a grievance contesting the basis of the designation pursuant to PD 03.02.130 "Prisoner/Parolee Grievances."

PD 04.04.113 ¶¶ H,M,T, EE. (ECF No. 42-7, PageID.314-317, 320).

2023 WL 9382485 at *6 (Dec. 12, 2023), *R&R adopted*, 2024 WL 277517 (W.D. Mich. Jan. 25, 2024), *aff'd in part, appeal dismissed in part*, 132 F.4th 924 (6th Cir. 2025), citing *Hall v. Trump*, 2020 WL 1061885 at *3-5 (M.D. Tenn., March 5, 2020) (to obtain injunctive relief, a plaintiff must bring an action against an individual "who ha[s] the power to provide the relief sought"); *Walker v. Scott*, 2015 WL 5450497 at *4 (C.D. Ill., Sept. 15, 2015) ("[a]s injunctive relief is the sole remedy available to a plaintiff under RLUIPA, the proper defendants are those with the responsibility to ensure that such relief is carried out"); *Wolf v. Tewalt*, 2021 WL 1093089 at *5 (D. Idaho, March 22, 2021) (prisoner's RLUIPA claims dismissed as to defendants lacking the authority to grant the injunctive relief requested).[6]

### V. Recommendation

For these reasons, I respectfully recommend that defendants Curtis, Ward, Welty, and Dirschell's motion for summary judgment (ECF No. 41) be **GRANTED**, that plaintiff's motion for summary judgment (ECF No. 43) be **DENIED**, and that this lawsuit be **terminated**.

Dated: August 13, 2025               /s/ Ray Kent
                                     RAY KENT
                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[6] In reaching this determination, the Court notes that it previously denied plaintiff's belated attempt to expand the scope of this lawsuit by adding six new defendants and new claims. *See Perry v. Curtis*, No. 1:22-cv-729, 2024 WL 3905994 at *5 (July 25, 2024), *R&R adopted*, 2024 WL 3904684 (W.D. Mich. Aug. 22, 2024) (stating in relevant part, "These six new defendants were not involved in Perry's meal dispute at MCF. Rather, Perry wants to sue these new defendants for creating, enforcing, and failing to re-evaluate the STG policy which he claims creates a burden on his religious practice . . . . Here, Perry's lawsuit involves a dispute with defendants Curtis, Ward, Welty and Dirschell about meals being served at MCF in March and April 2022. Perry's complaint has been screened, the defendants served, and a CMO issued. Justice does not require the Court to allow Perry to expand this lawsuit to add six new MDOC defendants who were not involved with his dispute at MCF.").